## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JONATHAN COFFEY et. al,

     Plaintiffs,

v.

                               Case No. 3:17-cv-90-MCR-CJK

WCW & AIR, INC. et. al,

     Defendants.

_____/

## <u>ORDER</u>

Plaintiffs Jonathan and Sydney Coffey (the "Coffeys") and Valerie Van Dyke filed this putative class action against Defendants WCW & Air, Inc. d/b/a World Class Water ("World Class Water"), Acquion, Inc. d/b/a Rainsoft ("Acquion"), and Home Depot, U.S.A. Inc. ("Home Depot") for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), unjust enrichment, and civil conspiracy. They allege that Defendants sold them water treatment systems after creating the false impression that their home water supply was unsafe to drink. Defendants each filed a motion to dismiss, *see* ECF Nos. 33, 34, 35, on which the parties requested oral argument, *see* ECF No. 38. The Court concludes, without the need for a hearing, that Defendants' motions to dismiss should be denied.

## I.    Background

The First Amended Complaint, and the documents the Court may consider on this motion,[1] contains the following allegations.  Acquion is a Delaware corporation that manufactures and markets residential water treatment systems.  World Class Water, a Georgia corporation, and Home Depot, a Delaware corporation, promote and sell water treatment products and services.  Van Dyke and the Coffeys are Florida consumers who signed purchase agreements for an Acquion water treatment system on February 18, 2014 (Van Dyke) and June 18, 2016 (the Coffeys), respectively.  Van Dyke "purchased" the water treatment system by paying out of pocket while the Coffeys have "agreed to purchase" the system but have yet to pay off the debt owed to Defendants.  Plaintiffs filed this action on behalf of themselves and other Florida consumers who "purchased" or "agreed to purchase" an Acquion water treatment system based on the following allegations, common to them and others in their proposed class.

---

[1] Defendants ask the Court to consider Plaintiffs' agreements with Defendants for the purchase and installation of water treatment systems, which are attached to Defendants' motions to dismiss. *See* ECF No. 33, Ex. 1-5; ECF No. 34, Exs. 4-10; ECF No. 35, Ex. 1.  The Court considers these contracts because they are undisputed and central to the claims at issue. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).  Defendant Acquion also asks the Court to take judicial notice of the pleadings from a different court case, *see* ECF No. 34, Ex. 1, and various EPA publications, *see* ECF No. 34, Exs. 2, 3.  Because these documents do not change the disposition of this motion, the Court assumes (in Defendants' favor) that it can consider them for purposes of argument.

World Class Water and/or Home Depot employees approach consumers in Home Depot stores, requesting the consumers' contact information in exchange for free Home Depot gift cards or other inducements. Using this information, a salesperson, employed by either World Class Water or another Aquion dealer, contacts the consumers to schedule a free, in-home test of the quality of their tap water. Thereafter, a salesman for World Class Water or another Acquion dealer,[2] using materials and instructions approved by Aquion, conducts the in-home test. Plaintiffs allege that Defendants know, but do not disclose, that the water quality test is only capable of detecting the presence of minerals contained in any municipality's tap water – and cannot detect contaminants or show that water is safe for consumption. Based on the test results, which invariably show the water to be "contaminated" by these minerals, consumers purchase or agree to purchase Aquion residential water treatment systems. Because these systems cost thousands of dollars – even though at least one comparable system costs less than $200 – consumers who cannot afford a system out of pocket are offered Home Depot credit cards to finance their purchase.[3] *See* ECF No. 1-1 at 36. In at least some cases, such as the Coffeys', Home Depot also orders and arranges for the installation of the water treatment

---

[2] The documents that World Class Water and Acquion asked the Court to consider on this motion reveal that Vincent Manzo Jr. is the salesperson that handled the sales to Plaintiffs.

[3] More specifically, Plaintiffs allege that the Coffeys agreed to pay $10,000 for a water treatment system while Van Dyke paid $3,500 while the comparable product in question can be found at Home Depot for $179.00. *See* ECF No. 1-1 at 7-8 n.1.

system. In short, Plaintiffs allege that the water quality test is a scam, created solely to sow fear and sell products and services.

## II.    **Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. To survive a motion to dismiss, the factual allegations in a complaint must state a claim that is "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To make this determination, courts must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in the plaintiff's favor, *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Dismissal is appropriate only where "no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

## III.    **Discussion**

Acquion argues that Plaintiffs lack standing to bring this suit, World Class Water argues that the Amended Complaint is a "shotgun pleading," and all three Defendants argue that Plaintiff has failed to plausibly state their claims for FDUTPA violations, unjust enrichment, and civil conspiracy. The Court addresses each argument, in turn.

a. *Standing*

Acquion argues that the Coffeys lack standing because they have yet to pay off the debt they owe on their water treatment system.[4]   Because standing is jurisdictional, the Court addresses this argument as a preliminary matter. *See Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (explaining that standing is jurisdictional).   Article III provides that a plaintiff has standing to bring suit if "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," the injury "fairly can be traced to the challenged action," and "is likely to be redressed by a favorable decision." *See Valley Forge Christian College v. Americans United for Separate of Church and State*, 454 U.S. 464, 474 (1982).   The Coffeys satisfy this standard.   Plaintiffs allege that:  (1) the Coffeys suffered actual injury by paying a non-refundable $49.00 processing fee and incurring thousands of dollars of debt, (2) these injuries occurred due to Defendants' scheme to sell water treatment systems, and (3) Defendants' conduct violates FDUTPA and support their claims of unjust enrichment and civil conspiracy. These allegations establish the Coffeys'

---

[4] Acquion also argued that Van Dyke lacked standing for this reason.  However, this argument is not applicable to her.  The Amended Complaint alleges that, unlike the Coffeys, Van Dyke paid off any debt owed on the water treatment system.

standing at this stage.[5] *See Bischoff v. Osceola County, Fla.*, 22 F.3d 874, 878 (11th Cir. 2000) ("[W]hen standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient.").

     b. *Shotgun Pleading*

The Eleventh Circuit has warned that, if the plaintiff has filed a "shotgun pleading," which would make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," the Court should require the plaintiff to replead before going through the onerous task of trying to decipher the allegations at issue. *See Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 367 (11th Cir. 1996).   World Class Water argues that the First Amended Complaint is a shotgun pleading because it "lump[s] together all defendants," making it difficult to discern the conduct each Defendant allegedly committed. *See* ECF No. 33 at 9-11.   The Court disagrees.   Although the First Amended Complaint refers to Defendants collectively in some instances, it also refers to Defendants' specific actions in others.   In this circumstance, it is reasonable to infer that, where Defendants are "lump[ed] together," the allegations apply to all

---

[5] Acquion argues that the $49.00 fee and the debt the Coffeys incurred for entering into the agreement to purchase the water treatment system are not recoverable under FDUTPA as a matter of law.   The Court disagrees. *See infra* at Part III(c).

Defendants. *See infra* at Part III(c) (discussing the allegations pertaining to each Defendant in more detail).

    c. *FDUTPA*

To state a FDUTPA claim, a plaintiff must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012). An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" while a deceptive act "occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See PNR, Inc. v. Beacon Prop. Mgmt, Inc.*, 842 So.2d 773, 777 (Fla. 2003) (cites and quotations omitted). Because FDUTPA claims focus on the defendant's conduct, whether an individual plaintiff relied on the unfair or deceptive practice is irrelevant. *See Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) ("'A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.'") (quoting *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. 1st DCA 2000)).

The parties dispute whether Rule 9(b)'s heightened pleading standard applies to FDUTPA claims, and district courts in this circuit are split on this issue. *See Harris v. Nordyne, LLC*, No. 14-CIV-21884-BLOOM/Valle, 2014 WL 12516076,

at *4 (S.D. Fla. Nov. 14, 2014) (listing several cases on each side of the issue). The Court need not weigh in because Plaintiffs' FDUTPA claim survives, regardless. Rule 9(b) requires that, "[i]n all averments of fraud … the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b). This requires providing defendants notice of:

(1) precisely what statements were made in what documents or oral representations or what omissions were made,

(2) the time and place of such statement and the person responsible for making (or, in the case of omissions, not making) same,

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants obtained as a consequence.

See *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Plaintiffs satisfy this standard.

The First Amended Complaint, read with the contracts Defendants asked the Court to consider on this motion, *see supra* footnote 1,[6] reflects that:

(1) After a Home Depot or World Class Water employee has solicited their contact information, Vincent Manzo Jr., who works for World Class

---

[6] *See also Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988) (finding that the plaintiff satisfied Rule 9(b) based on the complaint and other documents in the record); *Navia v. Nation Star Mortgage LLC*, 708 F. App'x 629, 629 (11th Cir. 2018) ("When evaluating a Rule 12(b)(6) motion to dismiss, the district court can consider documents attached to the motion to dismiss … if they are central to the plaintiff's claims and their contents are undisputed.") (citing *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam)).

Water or another Acquion dealer, conducted a water quality test using Acquion-approved materials in Plaintiffs' homes. (Element No. 2).

(2) Manzo did not disclose that the test detected only whether Plaintiffs' water was "contaminated" by the presence of minerals found in ordinary tap water – nor did any Defendant before Van Dyke and the Coffeys entered agreements to purchase water treatment systems on February 18, 2014 and June 18, 2016, respectively. (Element No. 1).

(3) Manzo's use of the water quality test as part of a sales pitch for the water treatment system, and Defendants' corresponding omissions,[7] created the false impression that Plaintiffs' home water supply was unsafe without water treatment. (Element No. 3).[8]

(4) Based on this impression, Van Dyke and the Coffeys entered into agreements to purchase an Acquion water treatment system[9] for thousands of dollars when at least one comparable system sells for less than $200. *See supra* footnote 3. Manzo subsequently encouraged the Coffeys to apply for Home Depot credit cards to finance the purchase.

(5) In the Coffeys' case, Home Depot also agreed to order the Acquion water treatment system and arranged for World Class Water to install the system on June 25, 2016. (Element No. 4).

---

[7] *See Zamber v. American Airlines, Inc.*, 282 F. Supp.3d 1289, 1300 n.8 (S.D. Fla. 2017) (explaining that Plaintiff could "state a claim based on a deceptive omission" even assuming "Plaintiff had not adequately pled a deceptive representation" because "FDUPTA applies to both representations and omissions.") (citing *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016)).

[8] The Eleventh Circuit has held that consumers may be deceived based on the net impression left on them considering all relevant facts, even when all of the defendant's representations to the plaintiff are "technically or literally true." *See F.T.C. v. Peoples Credit First, LLC*, 244 F. App'x 942, 943-44 (11th Cir. 2007). Although *Peoples Credit* concerned an FTC violation, FDUPTA requires "Florida courts [to] give 'due consideration and great weight' to FTC cases." *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2017).

[9] As stated, Van Dyke paid for the water treatment system out of pocket while the Coffeys have only incurred the debt.

Accordingly, each Defendant is on notice of its alleged role in the joint scheme to purposely effectuate a FDUTPA violation. Because Rule 9(b) allows intent to be "averred generally," *see* Fed. R. Civ. P. 9(b), and Florida courts have long held that a plaintiff can bring a FDUTPA claim against a defendant based solely on his "direct participation" in a FDUPTA violation, *see Rollins, Inc. v. Heller*, 454 So.2d 580, 582-83 (Fla. 3d DCA 1984), *review denied*, 461 So.2d 114 (Fla. 1985) (recognizing that the plaintiff did not have to pierce the corporate veil to bring a suit against both a subsidiary company and its parent company because "[the parent company] was itself *a direct participant* in the dealings with the Hellers") (emphasis added),[10] this is sufficient to state a FDUTPA claim against *all three* Defendants, *see State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1311 (M.D. Fla. 2014) (finding that the plaintiff stated a FDUTPA claim against all defendants where the plaintiff alleged the role each defendant played in the scheme). Thus, Plaintiffs have satisfied the pleading standard for a FDUTPA claim.

Defendants also argue that Plaintiffs have failed to state a FDUTPA claim. Acquion suggests that the allegations in the First Amended Complaint lack

---

[10] *See also Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp.2d 1045, 1056 (S.D. Fla. 2009) ("To state a claim under the FDUTPA, one need not show the defendant was the principal actor involved in the violative acts, or that the defendant initiated those acts. . . . [I]t is sufficient to allege that a party directly participated in a violation of the FDUTPA, even if that violation was initiated by another.") (citing *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F. Supp.2d 1215, 1222 (S.D. Fla. 2008); *K.C. Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073-74 (Fla. 5th DCA 2008)).

credibility because of their similarity to those raised by different plaintiffs in a different case against Acquion and Home Depot. The Court fails to see how that would warrant a dismissal. The fact that other parties have raised substantially similar allegations against the same Defendants arguably makes Plaintiffs' allegations *more* credible, not less. More importantly, on a motion to dismiss, the plaintiffs' allegations are accepted as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Acquion also argues that selling water treatment systems that only remove certain minerals from water is not a deceptive act, citing websites purportedly showing that Acquion water treatment systems have been certified by various trade associations. *See* ECF No. 34 at 9 n.3. However, the certifications of these systems have not been raised in either the First Amended Complaint or the documents Defendants asked the Court to consider on this motion. *See supra* footnote 1. As a result, the Court cannot consider the websites or system certifications at this time. Regardless, what the water treatment system is or is not able to do is immaterial to Plaintiffs' theory of the case – that Defendants used a water quality test to create the false impression that Plaintiffs' home water supply was unsafe without water treatment.

Acquion and Home Depot also argue that, even if Plaintiffs were misled by the water quality test, they had no duty to disclose what the test detected.[11]  It is not clear whether plaintiffs must establish an independent duty to disclose on a FDUTPA claim based on an omission affirmatively used to mislead. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337-38 (11th Cir. 2012) (declining to decide "whether or not a duty to disclose is an element of a FDUTPA claim," though concluding that the plaintiff would need to establish a duty where the plaintiff explicitly based its FDUTPA claim on the defendant's breach of "an affirmative duty of disclosure" and there was no indication that the defendant directly participated in the FDUPTA violation).  The Court disagrees with Acquion and Home Depot, regardless.  The Florida Supreme Court has long held that a seller has a duty to disclose material information that is "not equally within the ken of the buyer." [12] *See Kitchen v. Long,*

---

[11] Technically, Acquion argues that it is not required to disclose all of the different things that a water quality test *cannot do*.  This argument is based on a misunderstanding of Plaintiffs' allegations, at least when read as a whole and viewed in the light most favorable to them.  Plaintiffs fault Defendants for misleading them about what the water quality specifically tests for, not for failing to disclose every item the water quality test could not detect.

[12] The Court acknowledges that, in *Virgilio*, the Eleventh Circuit found this rule inapplicable where developers were accused of failing to disclose that they had built homes on land used as a bombing range during WWII. This case is inapplicable here. The Eleventh Circuit reached this conclusion because, although the plaintiffs made a conclusory assertion otherwise, there was no indication that the house developers were acting as an agent for the house sellers or that the house developers had any direct connection to the alleged scheme to deceive the plaintiffs. *See Virgilio*, 680 F.3d at 1336 (finding no duty to disclose because "Count 1's allegation that Defendants were acting as [the Seller's] agent is a mere conclusion."). Although Acquion and Home Depot mistakenly suggest otherwise, Plaintiffs' theory of the case is based on each Defendant's active participation in the joint scheme, not on an agency theory, *see supra* note at Pgs. 9-10 (discussing each defendant's role in the alleged scheme). *See Rollins, Inc. v. Heller*, 454 So.2d 580, 582-83 (Fla. 3d DCA 1984), *review denied*, 461 So.2d 114 (Fla. 1985) (explaining that

*L.R.A.*, 67 Fla. 72, 76 (Fla. 1914) (stated in connection with a dispute over the sale of "a fine-looking mule" with undisclosed health problems).[13]  Such is the case here. Plaintiffs allege that, as part of a sales pitch for water treatment systems, Manzo conducted an in-home water quality test designed to invariably show that their home water supply was contaminated – without revealing that the test only detects the presence of minerals found in ordinary tap water.  Because it is at least plausible that Plaintiffs could not readily determine what *Defendant's* water quality test actually detected and because this information appears to be material to the sale of a water treatment system "designed to treat the water conditions found at the time of the … water test," ECF No. 35-1 at 6, the Court declines to find, as a matter of law, that Defendants did not have a duty to disclose this information.[14]

---

the plaintiff did not have to pierce the corporate veil to bring a suit against both a subsidiary company and its parent company because "[the parent company] was itself *a direct participant* in the dealings with the Hellers") (emphasis added).

[13] *See also Hauben v. Harmon*, 605 F.2d 920, 924 (5th Cir. 1979) (explaining that "an affirmative duty to disclose exists in Florida" where "the facts are solely within the knowledge of the representor"); *Johnson v. Davis*, 480 So.2d 625, 629 (Fla. 1985) (finding that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer"); *Nessim v. DeLoache*, 384 So.2d 1341, 1344 (Fla. DCA 3d 1980) ("The classic illustration of fraud is where one party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation.") (citations omitted); *Ramel v. Chasebrook Const. Co.*, 135 So.2d 876, 882 (Fla. 2d DCA 1961) ("One exception to this rule is that nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact.").

[14] Defendants' duty to disclose was also arguably triggered  where:  (1) a Home Depot or World Class Water employee solicited Plaintiffs' contact information, (2) World Class Water or another Acquion dealer subsequently scheduled Plaintiffs for a test that would purportedly "evaluat[e]" the quality of their water, and (3) Manzo conducted the evaluation which invariably

World Class Water and Home Depot argue that, because the Coffeys agreed to an integration clause in which the Coffeys "expressly disclaim" the existence of "express or implied" representations that conditioned their agreement for the installation of the water treatment system,[15] *see* ECF No. 33-2 at 1, they are unable to successfully state a FDUTPA claim.[16] To support this argument, World Class Water and Home Depot cite a handful of Florida cases finding that a FDUTPA claim cannot be based on misrepresentations that are expressly contradicted by the agreement at issue. *See, e.g., Dorestin v. Hollywood Imports, Inc.*, 45 So.3d 819, 825

---

"revealed" that their water was contaminated as part of a sales pitch for a water treatment system. *See White v. Grant Mason Holdings, Inc.*, __ F. App'x __, No. 17-13110, 2018 WL 3323473, at *4-*5 (11th Cir. July 6, 2018) (per curiam) (explaining that, under Florida law, "'a party in an arm's length transaction [who] undertakes to disclose information" must disclose "'all material facts'") (quoting *Gutter v. Wunker*, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994).

[15] More specifically, the integration clause states that "[t]his Agreement expressly supersedes all prior written or verbal agreements or representations made by Home Depot … or anyone else. Except as set forth in this Agreement, You agree that there are no oral or written representations or inducements, express or implied, in any way conditioning this Agreement, and You expressly disclaim their existence." *See* ECF No. 33-2 at 1.

[16] Neither World Class Water nor Home Depot seem to argue that the merger clause *contractually* stops Plaintiffs from even trying to assert a FDUTPA claim on the basis of pre-contractual statements. This is presumably because the Florida Supreme Court has long held that an "integration" or "merger clause" is treated as evidence as to the merits of claims based on pre-contract representations and not as a complete bar to raising claims on that basis. *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027-31 (11th Cir. 2017) (discussing *Oceanic Villas, Inc. v. Godbson*, 4 So.2d 689, 690 (Fla. 1941)); *see also Noack v. Blue Cross and Blue Shield of Florida, Inc.*, 742 So.2d 433, 434 (Fla. 1st DCA 1999) ("[I]t is a well-established rule that 'alleged fraudulent misrepresentations may be introduced into evidence to prove fraud notwithstanding a merger clause in a related contract.'") (quoting *Wilson v. Equitable Life Assurance Soc'y*, 622 So.2d 25, 27 (Fla. 2d DCA 1993)); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 605-08 (Fla. 2d DCA 1997) ("[C]ourts do not have the right to limit and, in essence, to abrogate, … the expanded remedies granted to consumers" under FDUTPA, a "legislatively created scheme," which expressly states that it creates a remedy "'in addition to' other remedies under state or local law") (quoting Fla. Stat. § 501.213).

(Fla. 4th DCA 2010) (rejecting a FDUTPA claim based on an alleged misrepresentation "that they had to buy the extended warranty to get the car" when the contract explicitly stated that buying the warranty "is not a requirement to purchase your vehicle or obtaining financing").[17]   These courts reason that a consumer cannot be *reasonably deceived* when the contract that is ultimately signed expressly contradicts the misrepresentation. *See id.*  This case is distinct.  Although the pertinent integration clause suggests that the Coffeys did not *rely on* Defendants' suggestion that their home water supply was not safe to drink without water treatment, it does not *contradict* that suggestion.[18] *Compare Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1063 (S.D. Fla. 2009) (rejecting the same argument because "[n]othing in the Purchase and Sales Agreements contradicts any prior or oral written statements regarding the purported partnership between Cay

---

[17] *See also TRG Night Hawk Ltd. v. Registry Development Corp.*, 17 So.3d 782, 784 (Fla. 2d DCA 2009) (reversing denial of motion for directed verdict on a FDUTPA claim based on alleged misrepresentations concerning the intended use of property where an earlier version of the contract contained a provision guaranteeing that the property would be used in that way was replaced by a subsequent contract which "expressly removed any references to the 'Intended Use' of 218 units for the property"); *Rosa v. Amoco Oil Co.*, 262 F. Supp.2d 1364, 1367 (S.D. Fla. 2003) (granting a motion to dismiss a FDUTPA claim based on an alleged misrepresentation that the agreements at issue would run for twelve years even though they "both specify that the term is for four years").

[18] In a single sentence, World Class Water argues that the Coffeys cannot state a FDUTPA claim because their allegations purportedly contradict a different contract term specifying that the water treatment system "was designed to treat only the conditions uncovered by testing." *See* ECF No. 33 at 15.  The Court fails to see how this term contradicts the allegations underlying the Coffeys' FDUTPA claim that they were misled into thinking that the water quality test, itself, indicated that their home water supply was unsafe.

Clubs and Defendants.") *with supra* at Pg. 13 & n.17 (discussing the cases World

Class Water and Home Depot cite). This distinction is material because, as stated,

FDUTPA requires plaintiffs to prove only that the "allegedly deceptive conduct

would deceive an objective reasonable consumer," *see Fitzpatrick*, 635 F.3d at 1283,

not that they actually or even justifiably relied on the deceptive conduct in question,

*see Adrianne Roggenbuck Trust v. Development Resources Group, LLC*, 505 F.

App'x 857, 860-62 (11th Cir. 2013) (per curiam) (reversing summary judgment on

a FDUTPA claim on this basis after the district court found it "unreasonable as a

matter of law for the plaintiffs to rely on any oral statements when the sales contract

included general disclaimer and merger clauses") (citing *Fitzpatrick*, 635 F.3d at

1283).

Relatedly, Home Depot argues that Plaintiffs' FDUTPA claim fails because it

is based on a breach of contract. The Florida Supreme Court has concluded that "an

action giving rise to a breach of contract … may also constitute an unfair or deceptive

act," which "is and has always been cognizable under the FDUTPA." *See PNR, Inc.*,

842 So. 2d at 777. This is because "courts do not have the right to limit and, in

essence, to abrogate, … the expanded remedies granted to consumers" under

FDUTPA, a "legislatively created scheme," which expressly creates a remedy "'in

addition to' other remedies under state or local law" *See Delgado v. J.W. Courtesy

Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 605-08 (Fla. 2d DCA 1997) ((quoting Fla.

Stat. § 501.213)).[19] Citing a single district court case, Home Depot argues that, even after the Florida Supreme Court decided *PNR, Inc.*, FDUTPA claims "challeng[ing] the act of breaching the Agreement as unfair or deceptive" are not actionable. *See Rebman v. Follett Higher Educ. Group, Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (differentiating acts which are a mere breach of contract with those that give rise to the breach).[20]

Even assuming Home Depot is correct, this rule would not bar Plaintiffs from stating a FDUTPA claim. Non-contractual claims based on deceptive advertising, such as this one, are generally considered distinct from breach of contract claims. *See Williams v. Florida State Univ.*, No. 4:11-cv-350-MW/CAS, 2014 WL 340562, at *7 (N.D. Fla. Jan. 29, 2014) (citing *Burton v. Linotype Co.*, 556 So.2d 1126, 1128 (Fla. 3d DCA 1989), *review denied*, 564 So.2d 1086 (Fla. 1990); *Future Tech Intern., Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1568 (S.D. Fla. 1996)).[21] The challenged conduct is considered "'independent' of the contract'" because it

---

[19] *See also PNR, Inc. v. Beacon Property Mgmt, Inc.*, 842 So.2d 773, 776-77 (Fla. 2003) (following the logic in *Delgado*).

[20] *But see BKR Global, LLC v. FourWinds Capital Management*, 661 F.3d 1134, 1137 (11th Cir. 2011) (reversing summary judgment for the defendants on a FDUTPA claim based on a straight forward breach of contract without discussing whether the plaintiff's FDUTPA and breach of contract claims could co-exist).

[21] These cases are especially persuasive because they concern whether a plaintiff can raise various common law claims, which, unlike a FDUTPA claim, must be wholly independent from the contract at issue. *See Global Quest*, 849 F.3d at 1031 ("[A] fraudulent inducement claim … must be independent of a breach of contract claim.").

"'occurs and is completed prior to the formation of the contract.'" *See Future Tech.*, 944 F. Supp. at 1568 (quoting *Leisure Founders, Inc. v. CUC International, Inc.*, 833 F. Supp. 1562 (S.D. Fla. 1993)). Although courts recognize that the misrepresentation in question cannot concern a promise inexplicably tied to the performance of the contract, *see id.*, this exception would not apply here. The alleged misrepresentation – that Plaintiffs' water supply was not safe to drink without water treatment – concerns a fact that was allegedly untrue at the time it was made, not the performance of the contract, which necessarily concerns a future act that had yet to occur. *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (describing "allegations [that] concern representations about the yacht's condition and certain international building standards" as "separate and distinct from defendants' performance under the contract").[22]

Acquion argues that Plaintiffs have not adequately pled damages under FDUTPA. *See Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1365-66 (explaining that damages are an element of a FDUTPA claim seeking monetary relief). FDUTPA provides that a prevailing plaintiff "may recover actual damages,

---

[22] *See also Prewitt Enterprises, LLC v. Tommy Constantine Racing, LLC*, 185 So.3d 566, 569-70 (Fla. 4th DCA 2016) ("Appellee represented that he *already had* the funding for the team and did not need Appellant's money. As such, his representations were about *present* circumstances, i.e., his present funding ability, verifiably true or false at the time the representation was made. The fraudulent misrepresentation claim therefore did not merge with the breach of contract claim.").

plus attorney's fees and court costs." *See* Fla. Stat. § 501.211. It also provides that a plaintiff may not have "[a] claim … for damage to property other than the property that is the subject of the consumer transaction." *Id.* § 501.212(3). Florida courts have interpreted these provisions to mean that a plaintiff may only recover "actual damages," *see Rollins,* 454 So.2d at 584-85, and not "consequential damages to other property attributable to the consumer's use of such goods or services," *see Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 454 (Fla. 1st DCA 1985).[23] Plaintiffs have outlined their entitlement to actual damages in this case. Plaintiffs allege that Defendants created the impression that their home water supply was unsafe, which allowed Defendants to charge a premium on the total cost of the respective water treatment systems. This allegedly caused Plaintiffs direct, compensable injuries – either because they paid for the total cost of the treatment system (including this premium) out of pocket or by paying a $49.00 processing fee initially and incurring a debt for the remaining cost of the treatment system (also including this premium).

Acquion argues that the $49.00 fee does not constitute a form of actual damages because it was charged separate from the cost of the water treatment system. The Court disagrees. Florida courts have found, on several occasions, that a plaintiff could potentially recover similar fees where, as here, the fee is part of

---

[23] *But see Dorestin*, 45 So.3d at 825 (concurring, C.J. Gross) (suggesting that Florida courts may revisit cases finding that an FDUTPA plaintiff can only recover "actual damages" as measured by the "benefit of the bargain").

what the plaintiff had to pay to the defendant to receive the product or service at issue. *See, e.g., Tri-County Plumbing Services, Inc. v. Brown*, 921 So.2d 20, 22 (Fla. 3d DCA 2006).[24] After all, the exclusion on consequential damages only exists to ensure that a plaintiff not recover for damage to property *other than the property that is the subject of the consumer transaction.*" *See* Fla. Stat. § 501.212(3) (emphasis added).[25] Acquion notes that (some) Florida courts have not allowed plaintiffs to recover for loan payments to a third party on the product at issue because they were found to be consequential damages. *See, e.g., Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So.2d 311, 313-15 (Fla. 4th DCA 1998). However, unlike the fee in question, a loan payment is not compensable under FDUTPA because it is paid to a third party *after the consumer has already* purchased the product, and not as part of the price for the product itself. *See id.* Similarly, Acquion argues that the Coffeys cannot recover for debt that they incurred but have not paid.

---

[24] *See also Cannon v. Metro Ford, Inc.*, 242 F. Supp.2d 1322, 1332 (S.D. Fla. 2002); *2P Commercial Agency S.R.O. v. SRT USA, Inc.*, No. 2:11-cv-652-FtM-29, 2012 WL 3264551, at *4 (M.D. Fla. Aug. 10, 2012); *In re Lake Austin Properties I, Ltd., Litigation-Grand Palisades Resort*, No. 6:09-cv-978-Orl-22KRS, 2009 WL 10669849, at *3 (M.D. Fla. Oct. 28, 2009); *Olen Properties Corp. v. Moss*, 981 So.2d 515, 518 (Fla. 4th DCA 2008) (each construing deposits, down payments, and similar fees as actual damages under FDUTPA); *compare with Jones v. TT of Longwood, Inc.*, No. 6:06-cv-Orl-19DAB, 2007 WL 2298020, at *7 (M.D. Fla. Aug. 7, 2007) (finding Plaintiff suffered "no actual damages" based on a FDUTPA violation where "her down payment was returned in full").

[25] *See, e.g., Rollins*, 454 So.2d at 585 (not allowing plaintiffs to recover damages for "items stolen from the Hellers' house" on a FDUTPA claim concerning the consumer transaction for "the installation of [a] burglar alarm system and the services performed thereon" because those damages went beyond the cost of the installation and service agreement).

Here too, the Court disagrees. Plaintiffs allege that, as with the processing fee, the Coffeys incurred the debt as part of the price for the water treatment systems at issue. Incurring a debt, which the Coffeys remain legally obligated to pay, constitutes actual damages. *See Quintana v. Countrywide Home Loans, Inc.*, No. 09-20427-CIV, 2009 WL 10668318, at *8 (S.D. Fla. May 26, 2009) (finding the plaintiff adequately pleaded actual damages on a FDUTPA claim based on the debt the plaintiff owed on "a mortgage beyond her means"). Acquion also argues that, because Plaintiffs' damages theory turns on the "premium" Defendants could allegedly charge due to the alleged scheme, Plaintiffs must allege facts establishing that the water treatment systems were sold at above market price.[26] However, to provide proper notice of their claims, Plaintiffs are only required to allege a theory that would *entitle them* to actual damages, not the facts needed to determine the precise amount they would recover if they were to prevail. As the Southern District of Florida explained in rejecting the same argument,

> Plaintiff has alleged a plausible theory of damages, in that she alleged that she paid a price premium for the Products due to the 'All Natural' and 'No Artificial Ingredients' labeling. That is all that is required to be pled under the Federal Rules of Civil Procedure. At this stage in the litigation, Plaintiff is only required to state a claim that is plausible on its face, which she has done.

---

[26] The Court notes that, although Acquion suggests otherwise, a FDUTPA plaintiff is not always required to prove damages under a difference in value theory. *See Rollins, Inc.*, 454 So.2d at 585 (explaining that a "notable exception to the rule" exists "when the product is rendered valueless as a result of the defect," which would then entitle the plaintiff to restitution).

*See Bohlke v. Shearer's Foods, LLC*, No. 9:14-cv-80727, 2015 WL 249418, at *8 (S.D. Fla. Jan. 20, 2015).[27]

### d. *Unjust Enrichment*

An unjust enrichment claim exists where (1) the plaintiff conferred a benefit on the defendant, (2) the defendant voluntarily accepted the benefit, and (3) under the circumstances, it would be inequitable for the defendant to retain that benefit without paying the plaintiff for its value. *See Florida Power Corp. v. Cinty of Winter Park*, 887 So.2d 1237, 1242 n.4 (Fla. 2004). Because unjust enrichment is based on the premise that the law will imply a contract between the parties under appropriate circumstances, *see Tooltrend, Inc. v. CMT Untesili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999), it is well settled that the law will not imply a contract if the subject matter of the claim is covered by an "express valid and enforceable contract," *see Energy Smart Industry, LLC v. Morning Views Hotels-Beverly Hills, LLC*, 660 F. App'x 859, 864 n.2 (11th Cir. 2016). Defendants argue that Plaintiffs fail to state an unjust enrichment claim because (1) an express contract exists on the same subject matter, (2) Plaintiffs fail to plead that Defendants directly received any benefit, and (3)

---

[27] *See also Stires v. Carnival Corp.*, No. 6:02-cv-542-ORL31JGG, 2013 WL 21356781, at *2 (M.D. Fla. Jan. 2, 2003) ("Although Stires did not specify the value of the cruise promised and the value of the cruise received, which is the proper measure of FDUTPA damages, she has complied with Federal Rules of Civil Procedure 8(a) and 9.").

Plaintiffs fail to plead the circumstances such that Defendants' retention of any benefit received.  The Court addresses each argument, in turn.

### i.  *Existence of Valid and Enforceable Contract*

Home Depot and World Class Water argue that Plaintiffs cannot proceed on their unjust enrichment claim because agreements already exist on the same subject matter:  Plaintiffs' agreements with World Class Water to purchase the Water Treatment System and the Coffey's agreement with Home Depot for the installation of that system.  The Court is unconvinced.  As Defendants note, Plaintiffs' theory of the case is that Defendants *deceived them* into purchasing a water treatment system, which would make Plaintiffs' subsequent agreements voidable. *See New Testament Baptist Church Inc. of Miami v. State, Dept. of Transp.*, 993 So.2d 112, 116 (Fla. 4th DCA 2008) (explaining that contracts "arising from fraud, misrepresentation, or mistake, are voidable").[28]  It would be premature to decide that Plaintiffs are precluded from raising an unjust enrichment claim in these circumstances.[29] *See In*

---

[28] *Compare with Energy Smart Industry, LLC v. Morning Views Hotels-Beverly Hills, LLC*, 660 F. App'x 859, 864 n.2 (11th Cir. 2016) (finding that the plaintiff was foreclosed from bringing an unjust enrichment claim "[b]ecause the parties agree that the LED Lighting Retrofit Agreement is a *valid and enforceable* express contract") (emphasis added).

[29] The Court therefore does not address Plaintiffs' argument that their unjust enrichment claim does not pertain to the same subject matter as their agreements with World Class Water and Home Depot. *See Bluesky Greenland Environmental Solutions, LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp.2d 1356, 1369 (S.D. Fla. 2013) ("The unjust enrichment claim does [not] arise out of the parties' performance or breach of the express agreement between them, and therefore states a potentially valid cause of action.") (citing *Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 85 So.3d 1112, 1114 (Fla. DCA 4th 2012)).

*re Takata Airbag Products Liability Litig.*, 193 F. Supp. 3d 1324, 1345 (S.D. Fla. 2016) (denying a motion to dismiss an unjust enrichment claim "because Plaintiffs have alleged that the warranties are procedurally and substantively unconscionable" and "not enforceable"); *Mobil Oil Corp. v. Dade Cty. Esoil Management Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) ("*Until an express contract is proven*, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature.") (emphasis added) (citing *H.L. McNorton v. Pan American Bank of Orlando*, 387 So.2d 393, 399 (Fla. 5th DCA 1980)).

ii.  *Voluntary Receipt of Direct Benefit*

Citing the Eleventh Circuit's decision in *Virgilio*, Acquion and Home Depot argue that, because Plaintiffs did not allege that they personally paid them the price of the water treatment system, Plaintiffs necessarily fail to show the conferral of a direct benefit on them. *See Virgilio*, 680 F.3d at 1337-38. *Virgilio* does not stand for this proposition.  In that case, two home purchasers (the "Buyers") brought an unjust enrichment claim against the entity who sold them their homes (the "Seller") and the entities that developed their residential community (the "Developers") for failing to disclose that the homes were built on land that had been used as a bombing range during World War II.  Although the Buyers paid the Seller for the homes directly, they alleged that the Developers "indirectly benefitted" from the sale because the Seller would pass on 1.5% of the purchase price to the Developer under a separate

contract between those parties. *See id.* at 1337. The Eleventh Circuit concluded that, under those circumstances, the Buyer had not conferred a direct benefit to the Seller. It reasoned that, unlike in *MacMorris v. Wyeth, Inc.*, No. 2:04-cv-596-FTM-29-DNF, 2005 WL 1528626, at *1-*4 (M.D. Fla. June 27, 2005), which reached the opposite result, the Buyers did "not seek to recover money [the Developers] received as partial payment for the houses they bought; instead, they [sought] the money [the Seller] paid for *marketing services* under an entirely separate services contract." *See Virgilio*, 680 F.3d at 1337. In short, *Virgilio* stands for the proposition that a party is not directly benefited by the plaintiff when the only benefit it received was for performing a service for a different party under a different, albeit arguably related, contract. Accordingly, even after *Virgilio* was decided, the Eleventh Circuit has found that a plaintiff may have conferred a "direct benefit" on a defendant through an intermediary where, like in *MacMorris*, where the defendant directly profited from and involved in depriving the plaintiff of the benefit at issue. *See Cimaglia v. Moore*, 724 F. App'x 695, 699 (11th Cir. 2018) ("Cimaglia's payment of $120,000 of Moore's debt was a direct benefit to him, even if it didn't pass through his bank account first.").[30] The Court agrees with the Southern District of Florida that a per

---

[30] *See also Wilson v. EverBank, N.A.*, 77 F. Supp.3d 1202, 1236-37 (S.D. Fla. 2015); *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2014 WL 428208, at *13 (S.D. Fla. Aug. 27, 2014); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp.2d 1269, 1288 (S.D. Fla. 2013); *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp.2d 1311, 1327 (M.D. Fla. 2013)*; Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011); *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007);

se rule that a plaintiff could never confer a "direct benefit" through an intermediary would "undermine the equitable purpose of unjust enrichment claims." *See Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (citing 11 Fla. Jur. 2d Contracts § 288)).

In this case, Plaintiffs allege they paid for the cost of the water treatment system (either out of pocket or by incurring debt) and the $49.00 processing fee; that Defendants are jointly responsible for inducing them to pay those fees through the water quality test scheme; and that Defendants were in a position to profit from the scheme. Notably, unlike in *Virgilio*, there is no suggestion that any defendant only benefited from the scheme by performing services for a different party under a separate contract. Whether Defendants voluntarily received a direct benefit under these circumstances is a question of fact the Court declines to reach at this stage. *See Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236-37 (S.D. Fla. 2015) (denying a motion to dismiss where "the plaintiff allege[d] conferral of a benefit on a defendant through an intermediary" because "'[w]hether [Defendants] did or did not receive a direct benefit from Plaintiff [under these circumstances] is a question of

---

*MacMorris v. Wyeth, Inc.*, No. 2:04-cv-596-FTM-29-DNF, 2005 WL 1528626, at *1-*4 (M.D. Fla. June 27, 2005) (each concluding that a plaintiff may confer a direct benefit on a defendant through an intermediary). *Compare with Harvey v. Florida Health Sciences Center, Inc.*, 728 F. App'x 937, 947 (11th Cir. 2016) ("[T]he district court properly concluded that Mrs. Harvey failed to present sufficient evidence for a jury to conclude that she conferred a 'direct' benefit on the Hospital" by "reimbursing Medicare for [her medical] expenses" because she failed to demonstrate that the Hospital was responsible for the expenses in question).

fact that cannot be resolved at the motion to dismiss stage'") (quoting *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009)).[31]

### iii. *Circumstances Making Retention Unjust*

As with the FDUTPA claim, Defendants argue that the circumstances that would allow Defendants to retain the full price Plaintiffs paid for their water treatment systems must be pleaded with particularity, which Plaintiffs have purportedly failed to do. *See* ECF No. 34 at 28 ("For the same reasons outlined above, Plaintiffs have failed to plead deception with particularity."). The Court acknowledges that at least "*some district courts* have held that where an unjust enrichment claim is based on … fraud, the Rule 9(b) standard applies." *See United States Stepe v. RS Compounding LLC*, __ F.R.D. __, No. 8:13-cv-3150-T-33AEP, 2017 WL 5998992, at *9 (M.D. Fla. Dec. 4, 2017) (emphasis added). For the reasons stated when discussing the FDUTPA claim, the Court finds that Plaintiffs have pled their unjust enrichment claim with the particularity Rule 9(b) requires. *See supra* at Part III(c).

---

[31] *See also Williams*, 2011 WL 4368980, at *9; *Skytruck Company, LLC v. Sikorsky Aircraft Corp.*, No. 2:09-cv-267-FtM-36SPC, 2011 WL 13137383, at *6 (M.D. Fla. March 16, 2011); *Romano v. Motorola*, No. 07-CIV-60517, at *2 (S.D. Fla. Nov. 26, 2007); *MacMorris*, 2005 WL 1528626 at *1-*4 (each denying a motion to dismiss under similar circumstances).

e. *Civil Conspiracy*

A plaintiff states a claim for civil conspiracy by alleging "(a) a conspiracy between two or more parties, (b) to do an unlawful act or do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damages to plaintiff as a result of the acts performed pursuant to the conspiracy." *See Walters v. Blankenship*, 981 So.2d 137, 140 (Fla. 5th DCA 2006). The unlawful act must generally consist of an actionable underlying tort or wrong. *See id.* (also discussing an exception to the rule not applicable here). As discussed with respect to Plaintiffs' FDUTPA and unjust enrichment claims, which are based on the same facts, *see also BKR Global, LLC v. FourWinds Capital Management*, 661 F.3d 1134, 1135-38 (discussing FDUTPA and civil conspiracy claims jointly in reversing summary judgment for the defendant on both claims), Plaintiffs allege that:

(1) Defendants engaged in a joint scheme to sell water treatment systems, (Element No. 1),

(2) The scheme constitutes actionable conduct (Element No. 2), *see supra* at Parts III(c)-(d) (explaining why Plaintiffs state a claim for a FDUTPA violation and unjust enrichment on the same basis, even if Defendants argue otherwise),

(3) Each Defendant had a specific role that furthered the conspiracy (Element No. 3), *see supra* at Pgs. 10-11, and

(4) Plaintiffs purchased water treatment systems they did not need as a result (Element No. 4).

Defendants argue that Plaintiffs' civil conspiracy claim fails because it has not been pleaded with particularity. *See American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007) ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity."). The Court disagrees. Plaintiffs' conspiracy claim is based on the same conduct advanced in support of their FDUTPA and unjust enrichment claims and, thus, satisfies Rule 9(b) for the same reasons as those claims. *See Acciard v. Whitney*, No. 2:07-cv-476-UA-DNF, 2008 WL 5120901, at *5 (M.D. Fla. Dec. 4, 2008) (denying a motion to dismiss FDUTPA and civil conspiracy claims where the plaintiff "allege[d] these defendants' participation in the fraudulent investment scheme, which caused financial injury to Plaintiffs").

## IV. Conclusion

Defendants' Motions to Dismiss, ECF Nos. 33, 34, 35, are **DENIED**. Accordingly:

1. The parties' Joint Motion for Hearing, ECF No. 38, is **DENIED AS MOOT**,

2. The Clerk is **DIRECTED** to lift the previously imposed stay on this case, *see* ECF No. 32,[32]

---

[32] At the parties' request, *see* ECF Nos. 12 & 30, the Court had stayed this case pending the resolution of the motions to dismiss, *see* ECF No. 32.

3. Defendants are **DIRECTED** to file an Answer to the Amended Complaint within fourteen (14) days of this Order, and

4. The parties are **DIRECTED** to confer and submit an Amended Rule 26(f) Joint Report within thirty (30) days of this Order.

**DONE AND ORDERED** on this 30th day of August, 2018.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**